RCH:EWS
F. #2022R00718

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JOHN BOLDEN,
ANTHONY CARREIRA,
JACQUELINE JOHNSON, and
CHRISTIAN MCKENZIE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

<u>C O M P L A I N T   A N D
A F F I D A V I T   I N   S U P P O R T
O F   A R R E S T   W A R R A N T</u>

(18 U.S.C. § 1349)

Case No.  24 MJ 487

EASTERN DISTRICT OF NEW YORK, SS:

      KENNETH F. HOSEY, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      In or about and between March 2020 and October 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN BOLDEN, JACQUELINE JOHNSON, ANTHONY CARREIRA and CHRISTIAN MCKENZIE, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Small Business Administration ("SBA") and one or more financial institutions administering the Paycheck Protection Program ("PPP"), and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire

communication in interstate commerce, one or more writings, signs, signals, pictures and sounds, which offense occurred in relation to, and involved one or more benefits authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared emergency under Section 501 of the Stafford Act, to wit: fraudulent online applications for one or more PPP loans and emails containing supporting tax documentation for one or more PPP loans, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.	I am a Special Agent with the FBI and have been involved in the investigation of numerous cases involving public corruption, including fraud, bribery and money laundering. I have been an FBI Special Agent for 29 years. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation. Based on my conversations with other law enforcement officers and others; my review of law enforcement records and information provided by others; and my review of open-source information, I have learned the following, in substance and in part.

2.	At all times relevant to this Complaint, unless otherwise indicated:

I.	<u>The COVID-19 Pandemic in the United States and the Paycheck Protection Program</u>

3.	In or about December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), caused outbreaks of the coronavirus disease COVID-19 that have since spread

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

globally.  On or about January 31, 2020, the Secretary of Health and Human Services declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States.  On or about March 11, 2020, the Director-General of the World Health Organization characterized COVID-19 as a pandemic.  On or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

4.     On or about March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to provide emergency financial assistance to the millions of Americans who were suffering adverse economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the PPP.  In or around April 2020, over $300 billion in additional PPP funding was authorized by Congress.

5.     To obtain a PPP loan, qualifying businesses were required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required recipient businesses, through an authorized representative, to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan.  For example, in the PPP loan application, recipient businesses, through an authorized representative, were required to state, among other things, their average monthly payroll expenses and number of employees.  Average monthly payroll expense figures were used to calculate the amount of money the businesses were eligible to receive under the PPP.

The recipient businesses were also required to provide certain documentation supporting the information contained in the PPP loan application.

6. PPP loan proceeds were required to be used by the recipient businesses on certain permissible expenses, to wit: payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the recipient businesses spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

7. The PPP was overseen by the SBA, which had authority over all PPP loans. Individual PPP loans, however, were issued and approved by private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

II.     The Defendants and Their Co-Conspirators

8. The defendant JOHN BOLDEN, a resident of Valley Stream, New York, was a full-time New York City Police Department ("NYPD") detective. BOLDEN also served as a tax preparer who operated and owned partnership interests in three franchise locations for a tax preparation business (hereinafter, the "Tax Preparation Business").

9. The defendant ANTHONY CARREIRA, a resident of Staten Island, New York, was an NYPD detective who, together with BOLDEN, owned partnership interests in one or more Tax Preparation Business franchise locations.

10. The defendant JACQUELINE JOHNSON, a resident of Valley Stream, New York, was BOLDEN's mother.

11. The defendant CHRISTIAN MCKENZIE, a resident of Wheatley Heights, New York, was BOLDEN's cousin.

12. Co-Conspirator-1, an individual whose identity is known to me,[2] founded and operated the Tax Preparation Business, which had multiple franchisees and locations throughout New York and elsewhere, including the ones operated by JOHN BOLDEN and ANTHONY CARREIRA.

III. The Fraudulent Schemes

A. Overview of Scheme to Defraud

13. Between approximately May 2020 and October 2022, the defendant JOHN BOLDEN engaged in a scheme to defraud the SBA and several financial institutions administering the PPP of federal COVID-19 emergency-relief funds meant for distressed small businesses by working with his clients and co-conspirators, including ANTHONY CARREIRA, JACQUELINE JOHNSON, and CHRISTIAN MCKENZIE, to obtain PPP funds to which they were not entitled. JOHN BOLDEN helped to obtain PPP funds for himself, ANTHONY CARREIRA, JACQUELINE JOHNSON, CHRISTIAN MCKENZIE, and more than 65 individuals by submitting, or causing to be submitted, online loan applications that contained materially false and fraudulent information. As part of the scheme to defraud, BOLDEN prepared fictitious Department of Treasury – Internal Revenue Service ("IRS") Form Schedule C documentation (the "Schedule C forms"),[3] which contained materially false and fraudulent

---

[2] As described in greater detail herein, Co-Conspirator-1 admitted to fraudulently obtaining PPP loans and conspiring with others, including BOLDEN and CARREIRA, to do the same. He/she has pleaded guilty to disaster relief fraud and wire fraud conspiracy, in violation of 18 U.S.C. §§ 1040 and 1349. He/She also admitted to falsifying tax returns for certain prior tax years. Information provided by Co-Conspirator-1 in connection with this investigation has proven reliable and has been corroborated by, among other items, bank records, witness interviews, and electronic messages.

[3] A Schedule C form is an IRS form used to report the income or loss from a business operated as a sole proprietorship.

information concerning his, his co-conspirators' and his clients' places of employment, gross income, and net income. These Schedule C forms, which accompanied the fraudulent PPP loan applications, included figures that would make it possible for BOLDEN, his co-conspirators, and his clients to apply for loan forgiveness without having to submit documentation to support the fraudulent figures used in the fictitious Schedule C forms.

      B.      <u>BOLDEN's Adoption of Scheme to Prepare Fraudulent PPP Loans Devised by Co-Conspirator-1</u>

      14.      On or about May 9, 2020, the defendant JOHN BOLDEN received an email from an individual whose identity is known to the affiant, which attached an audio recording of a meeting between Co-Conspirator-1 and other tax preparers discussing how to prepare fraudulent PPP loan applications using fictitious Schedule C forms.[4] The recording lasted approximately thirty minutes. During the recording, Co-Conspirator-1 recommended that meeting participants submit PPP loan applications in amounts less than $20,000 to avoid having to submit proof the money sought was properly used in order to apply for loan forgiveness. As Co-Conspirator-1 explained, "We all want the bread, but we also want the loan forgiveness. That's the big win."

      15.      Co-Conspirator-1 advised the meeting participants to generate fictitious Schedule C forms to accompany the fraudulent loan applications. Co-Conspirator-1 offered a formula for how to compute the exact figures on the Schedule C forms, explaining "whatever amount you want to get the person as a loan" could be calculated by taking the desired loan amount, dividing that figure by two-and-a-half, and then multiplying it by twelve to generate a fictitious figure for net profit to be listed on Line 31 on the Schedule C form. Co-Conspirator-1

---

    [4]    Unless otherwise indicated, all statements described herein are related in sum and substance and in part.

suggested that participants "stagger the number a little bit" to make the requested loan amounts appear legitimate, instructing them to "get creative" as to what occupation to list for their clients. Co-Conspirator-1 explained, "If you're gonna do some fake s[**]t, do plumbing, trucking, you know what I'm saying, something like that."  Co-Conspirator-1 also suggested that participants devise "some bulls[**]t name" of the business, such as "Mickey House of Toys." Co-Conspirator-1 then explained, "So, let's say some – let's say you got somebody give 'em 20 grand and taxing 'em 3,000, that person's gonna walk – 17,000 in his pocket and potentially have to pay a $4,000 loan back.   They walking away with 13 grand free of charge."

16. During the meeting, Co-Conspirator-1 alluded to the criminal consequences for the conduct being discussed.   Co-Conspirator-1 warned, "Now, I would suggest, [to] y'all mother[*****]s trying to send me to jail for this paper because all y'alls up in here on my IP address but, I couldn't figure out a better way to use it."   Co-Conspirator-1 said that Co-Conspirator-1 did not want to create an electronic record of his/her involvement in the scheme to prepare fraudulent PPP loan applications, saying, "I'll take all my money in cash, no Quick Pays on this."

C. <u>Fraudulent PPP Loans Submitted in the Names of BOLDEN, CARREIRA, JOHNSON, and MCKENZIE for Their Personal Benefit</u>

17. Over the ensuing months, the defendant JOHN BOLDEN prepared fictitious Schedule C forms used in the submission of PPP loan applications in the very manner suggested by Co-Conspirator-1, sometimes with Co-Conspirator-1's assistance.   As described below, fraudulent PPP applications were submitted on behalf of JOHN BOLDEN, ANTHONY CARREIRA, CHRISTIAN MCKENZIE, JACQUELINE JOHNSON and others.   MCKENZIE and JOHNSON also acted as intermediaries who referred multiple clients to BOLDEN for the submission of fraudulent PPP loans.

      i.    JOHN BOLDEN's Fraudulent PPP Loan Applications

18. On or about May 11, 2020, i.e., two days after the defendant JOHN BOLDEN received the recorded conversation described above, Co-Conspirator-1 emailed BOLDEN a fictitious IRS Form 1040[5] and fictitious Schedule C form for the 2019 tax year. The fictitious Form 1040 reported that BOLDEN, whose occupation was listed as a "Police Officer," only earned $5,866 in wages in 2019, even though NYPD payroll records and BOLDEN's bank statements reflect that he earned in excess of $100,000 in wages from the NYPD that year. The fictitious Schedule C form purported BOLDEN to have earned $129,583 in gross receipts and $99,764 in net profit from his principal business of "Security Services." The address listed for BOLDEN's "Security Services" business was the address of one of BOLDEN's tax preparation franchise locations. The section on the Schedule C form where the business name was to be listed was left blank.

19. On or about May 18, 2020, a $20,785 PPP loan application was submitted on JOHN BOLDEN's behalf. In support of the loan application, an IRS Form 1040 and Schedule C form exactly matching the ones received from Co-Conspirator-1 were submitted. Three days after BOLDEN's PPP loan application was submitted, BOLDEN withdrew $3,000 in cash from his Municipal Credit Union ("MCU") bank account. BOLDEN's PPP loan application was ultimately approved.

20. On or about February 20, 2021, a second draw PPP loan application in the amount of $20,782 was submitted on JOHN BOLDEN's behalf. The loan was approved and the money was credited to BOLDEN's MCU bank account. The next day, $15,000 was withdrawn

---

    [5]    An IRS Form 1040 is a tax form used to report federal personal income tax by United States residents.

from the account and transferred by bank check to another personal bank account controlled by BOLDEN.

21. On or about July 17, 2021, an application was submitted seeking forgiveness of JOHN BOLDEN's initial $20,785 PPP loan. The SBA forgave the loan on or about July 30, 2021.

ii. ANTHONY CARREIRA's Fraudulent PPP Loan Applications

22. On or about May 17, 2020, Co-Conspirator-1 emailed JOHN BOLDEN bearing subject line "Anthony." The email did not contain a message but attached a Schedule C form purporting ANTHONY CARREIRA to have earned $108,969 in gross receipts and $97,453 in net income in the principal business or profession of "Armed Security." The space for the name of CARREIRA's business was left blank. The business address listed on the Schedule C form was CARREIRA's residence. NYPD records indicate that CARREIRA earned regular and overtime wages throughout 2019 in excess of $100,000. These records also indicate that CARREIRA was approved for off-duty employment to operate an ATM business, but not armed security.

23. That day, JOHN BOLDEN forwarded Co-Conspirator-1's email and the attached forms to ANTHONY CARREIRA. On or about the following day, a PPP loan application for $20,302 was submitted on CARREIRA's behalf. The application listed an average monthly payroll of $8,121 and a single employee for the unidentified company. In support of the loan application, a Schedule C form exactly matching the one received from Co-Conspirator-1 was submitted.

24. The loan was approved. On or about May 20, 2020, $20,302 was credited to ANTHONY CARREIRA's personal bank account. That day, CARREIRA sent $4,000 via

Zelle to JOHN BOLDEN's bank account at MCU. The following day, BOLDEN made a $3,000 cash withdrawal from his MCU bank account.

25. On or about February 22, 2021, ANTHONY CARREIRA placed a call to the recorded customer service line for the entity that processed CARREIRA's PPP loan. During the call, CARREIRA indicated that he would like to confirm that no additional documents were needed to apply for a second draw PPP loan. The representative informed CARREIRA that he had only uploaded a Schedule C form but was required to submit his entire 2019 tax return documentation. Shortly thereafter, a fictitious IRS Form 1040 was submitted on CARREIRA's behalf, which did not reflect his occupation as an NYPD detective or list the wages he earned from the NYPD. This time, the fictitious Schedule C form submitted with the application—which contained the same fraudulent figures for gross income and net income purportedly earned by CARREIRA in 2019—listed the name of his business as "Anthony Carreira."[6] CARREIRA placed a second recorded call to the PPP loan processing entity's customer service line a few days later to confirm that he had submitted all the necessary tax documents to apply for a second draw PPP loan.

26. On or about March 15, 2021, a second draw PPP loan application in the amount of $20,302 was submitted on ANTHONY CARREIRA's behalf. The application was electronically signed by CARREIRA. The loan application included the same Schedule C form

---

[6] The tax preparer listed on the IRS Form 1040 was ANTHONY CARREIRA's spouse, who also worked with JOHN BOLDEN as a tax preparer at one of their Tax Preparation Business franchise locations. A PPP loan application on behalf of CARREIRA's spouse was also submitted in the amount of $20,099, which attached a fictitious Schedule C received from BOLDEN listing her gross income as $109,743 and net income as $96,477. After his spouse's PPP loan was approved, CARREIRA paid BOLDEN $3,000 via Zelle. CARRIERA's spouse successfully applied for a second draw PPP loan the following year, after which $4,000 in cash was withdrawn from her joint bank account shared with CARREIRA.

Case 1:24-cr-00361-DG    Document 1    Filed 08/08/24    Page 11 of 16 PageID #: 11

11

received from BOLDEN and Co-Conspirator-1. The loan was approved. Approximately two days after the loan proceeds were received, $4,000 in cash was withdrawn from CARREIRA's bank account.

  iii. <u>JACQUELINE JOHNSON's Fraudulent PPP Loan Applications</u>

  27. On or about May 12, 2020, Co-Conspirator-1 emailed JOHN BOLDEN with subject line "Jacqueline." The email did not include a message but attached a document titled "2019 Tax Return Documents (JOHNSON JACQUELINE).pdf." According to the attached federal tax return, IRS Form 1040, JACQUELINE JOHNSON, whose occupation was listed as a "LABORER," earned $24,767 in wages in 2019 but over $169,000 in total income. According to the Schedule C form accompanying the tax return, JOHNSON earned $122,301 in gross receipts as a "Beautician" for her purported business "Hair by Jacqueline." Notably, in or about June 2020 (<u>i.e.</u>, approximately one month later), JOHNSON submitted a credit card application to HSBC Bank in which she listed her "present employer" as "retired." BOLDEN and JOHNSON's residence, an address located in Valley Stream, New York, was listed on both the IRS Form 1040 and Schedule C form as JOHNSON's business address. BOLDEN and JOHNSON's residence is a two-family house.

  28. On or about May 13, 2020, a PPP loan was submitted in the amount of $20,318 on behalf of "Hair by Jacqueline." The application was electronically signed by JACQUELINE JOHNSON. The loan application included the same IRS Form 1040 and Schedule C form received by JOHN BOLDEN. The PPP loan was approved.

  29. On or about March 10, 2021, a second draw PPP loan application was submitted in the same amount of $20,318 and also on behalf of "Hair by Jacqueline." As before, the application was electronically signed by JACQUELINE JOHNSON and attached the

same 2019 Form 1040 and Schedule C form that were submitted with JOHNSON's initial PPP loan application.   The PPP loan was approved.

30.   JACQUELINE JOHNSON successfully applied for loan forgiveness for both loans.

iv.   <u>Defendant CHRISTIAN MCKENZIE's Fraudulent PPP Loan</u>

31.   On or about May 28, 2020, after CHRISTIAN MCKENZIE sent JOHN BOLDEN multiple emails with his personal and banking information, BOLDEN emailed MCKENZIE attaching a fictitious Schedule C, which purported MCKENZIE to have operated "Chris Kicks" and earned $118,698 in gross receipts and $97,067 in net profit during 2019 in his profession as a "sneaker salesman."

32.   On or about May 28, 2020, a $20,222 PPP loan was submitted on CHRISTIAN MCKENZIE's behalf.   The application was electronically signed by MCKENZIE.   The loan application included the same fictitious Schedule C prepared by JOHN BOLDEN.   The loan was approved.   On or about June 1, 2020, $20,222 was deposited in MCKENZIE's bank account.   MCKENZIE withdrew $4,000 in cash that day.

33.   On or about February 14, 2021, a second draw PPP loan application in the amount of $20,220 was submitted on CHRISTIAN MCKENZIE's behalf.   The application was electronically signed by MCKENZIE.   The documents submitted in connection with the loan application included an IRS Form 1099 Miscellaneous,[7] which purported MCKENZIE to have earned $118,698 in non-employee compensation from a footwear business located on Long Island, New York.   The name of the business listed in the IRS Form 1099 Miscellaneous was

---

[7]   An IRS Form 1099 Miscellaneous is used to report payments made in the course of a trade or business to another person or business who is not an employee.

not "Chris Kicks." The loan was approved. On or about February 17, 2021, $20,220 was credited to MCKENZIE's bank account. MCKENZIE withdrew $4,000 in cash two days later.

34. On or about July 28, 2021, an application seeking forgiveness of CHRISTIAN MCKENZIE's initial PPP loan was received and subsequently approved.

D. <u>MCKENZIE and JOHNSON Acted as Intermediaries Who Referred Clients to BOLDEN For the Submission of Fraudulent PPP Loans</u>

35. Defendants CHRISTIAN MCKENZIE and JACQUELINE JOHNSON acted as intermediaries who referred multiple clients to JOHN BOLDEN.

36. For example, in or about June 2020, Individual-1, an individual whose identity is known to the affiant, was referred to CHRISTIAN MCKENZIE and JOHN BOLDEN for the purpose of obtaining a fraudulent PPP loan. On or about June 4, 2020, Individual-1 texted MCKENZIE his/her email address, bank statement, photo identification, and social security number. MCKENZIE emailed that information to BOLDEN the following day. On or about June 6, 2020, BOLDEN emailed Individual-1, copying MCKENZIE, with instructions on how to apply for a PPP loan. The email attached a fictitious Schedule C form purporting that Individual-1 was a "barber" who worked at an entity called "Fine Cuts" and earned $117,990 in gross income and $99,385 in net income. Individual-1 did not work as a barber or for Fine Cuts. Nor did Individual-1 earn the income listed in the Schedule C form prepared by BOLDEN.

37. Acting on JOHN BOLDEN's instructions, Individual-1 applied for and received a PPP loan in the amount of $20,705. The Schedule C form attached to Individual-1's application was identical to the one received from BOLDEN. In fact, the metadata information for the fictitious Schedule C attached to Individual-1's fraudulent PPP loan application listed BOLDEN as the author of the document. On or about September 8, 2021, Individual-1 applied for loan forgiveness, which was approved.

38.     Notably, in or about and between June 5, 2020 and June 7, 2020 (i.e., the two-day period when Individual-1 received the fictitious Schedule C form described above), JOHN BOLDEN emailed Schedule C forms to the following thirteen individuals whose identities are known to the affiant.   These Schedule C forms were prepared by BOLDEN in a similar fashion described by Co-Conspirator-1 above and include similar figures for gross and net income.   The business addresses associated with the purported businesses listed on the PPP loan applications all appear to be residential, non-commercial locations.   The names starred below indicate that CHRISTIAN MCKENZIE served as a middleman for those individuals' applications.

| Name | Listed Gross Income | Listed Net Income | Listed Profession | Listed Business Name |
|---|---|---|---|---|
| Individual-2* | $117,120 | $97,960 | Tutoring services | Tutoring by [Individual-2] |
| Individual-3* | $118,015 | $97,315 | Barber | [Individual-3's] Haircuts |
| Individual-4 | $120,120 | $98,120 | Trucking | CJS Express Transport |
| Individual-5 | $118,025 | $95,733 | Cosmetic | Golden Glow Tans |
| Individual-6 | $118,032 | $104,532 | Taxi | [Individual-6's] Rides |
| Individual-7* | $117,850 | $96,652 | Hair Care | Sweet Hair |
| Individual-8* | $104,870 | $96,570 | Ridesharing Service | [Individual-8] |
| Individual-9* | $107,903 | $96,403 | Rudolph Austin | [Individual-9] |
| Individual-10* | $116,030 | $96,800 | Barber | Finest Hair |
| Individual-11* | $105,980 | $96,600 | Taxi | [Individual-11] |
| Individual-12* | $115,530 | $95,955 | Haircare | [Individual-12] |
| Individual-13 | $108,306 | $96,011 | Taxi | [Individual-13's] car service |
| Individual-14* | $115,090 | $95,243 | Animal care | [Individual-14's] dog walking |

39.     JACQUELINE JOHNSON likewise referred multiple clients to JOHN BOLDEN for the preparation of fraudulent PPP loans.

40.     For example, on or about June 5, 2020, JACQUELINE JOHNSON received an email from a family member attaching a driver's license and bank statements for

Individual-15, an individual whose identity is known to the affiant.   JOHNSON subsequently forwarded the email to JOHN BOLDEN.   Days later, a PPP loan application in the amount of $20,101 was submitted in the name of a company called "May and June."   The application listed the point of contact as Individual-15, and the listed business address was the same one that appeared on Individual-15's driver license.   In support of the loan application, a Schedule C form was submitted, which falsely purported Individual-15 to have served as an "artist" who earned $121,087 in gross receipts and $96,487 in net income.   Although Individual-15 operated a business called "May and June," the company had only earned approximately $2,000 in revenue.

    41. The PPP loan was approved.   On or about June 19, 2020, $20,101 was credited to Individual-15's bank account.   Individual-15 then wired $4,000 to JACQUELINE JOHNSON.

    42. On or about June 11, 2020, JOHNSON sent an email to Individual-16, an individual whose identity is known to the affiant, instructing Individual-16 to log onto a PPP lender's website using the username and password provided in the email and "upload the attached document."   Attached to the email was a Schedule C form purporting Individual-16 to have operated a business called "Financial Literacy" and earned $118,090 in gross receipts and $95,430 in net income.   Individual-16 did not in fact earn the income reflected in the Schedule C or operate the business listed therein.   A PPP loan application in the name of "Financial Literacy" was submitted, but it was denied.   JOHNSON subsequently demanded payment from Individual-16.

    43. In or around October 2022, which was shortly after the FBI interviewed multiple subjects of the government's investigation, JACQUELINE JOHNSON left a voicemail

message with Individual-16 informing him/her that he/she should have received something in the mail. As JOHNSON promised, Individual-16 was mailed a copy of the Schedule C form submitted with Individual-16's PPP loan application along with a document instructing Individual-16 to sign a form, which read in part, "We are preparing this tax documents and any additional documents based solely on the information we obtained from the taxpayer." Individual-16 was directed to mail the completed form to a post office box controlled by JOHN BOLDEN and JOHNSON.

WHEREFORE, your deponent respectfully requests that the defendants JOHN BOLDEN, JACQUELINE JOHNSON, ANTHONY CARREIRA, and CHRISTIAN MCKENZIE be dealt with according to law.

/s/ Kenneth F. Hosey
KENNETH F. HOSEY
Special Agent, Federal Bureau of Investigation

Sworn to before me this
_8_ day of August, 2024

THE HONORABLE LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK